# Graham v. Commonwealth.

(Decided Sept. 30, 1932.)

J. WALTER HARDESTY for appellant.

BAILEY P. WOOTTON, Attorney General, and WILLIAM R. ATTKISSON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming.

Appellant, Ben Graham, was indicted in the Marion circuit court for the murder of Mason Knuckles. On

the trial of the case, he was found guilty of manslaughter, and his punishment fixed at three years' imprisonment. He appeals.

The facts of the case as shown by the evidence for the commonwealth are these: Ben Graham was sitting in a shed in the rear of a shop talking with two other men. Mason Knuckles walked up with half a brick in his hand, drawn back, and said to Ben Graham, "Damn you." Graham said, "Go on off, I don't want to hurt you." Knuckles said, "You are a damn liar if you don't." Knuckles drew the brick back and called Graham a son of a bitch. Knuckles was standing with the half brick in his hand drawn back, about 14 feet from Graham. Graham drew his pistol and shot Knuckles. He fired three shots. Knuckles died in a few minutes. He was a young man about 5 feet tall, weighed about 115 pounds, and was weakly. Graham was about 6 feet tall and well proportioned. Mrs. Annie Phelps, who lived about a hundred yards from the shop, testified that Graham was at her house eating dinner, and that Knuckles came in and sat down by him. Graham said, "You don't know me, do you," Knuckles said, "Yes, I think it is Ben Grimes." Graham said, "No it is Ben Graham." Thereupon they had a little spat. She told Graham they could have no disturbances there, and told him to leave, and he left. A few minutes later Knuckles left. Before Graham left, she saw Knuckles pick up a knife and go towards Graham with it. She took the knife away from Knuckles; he then got a hammer, and advanced towards Graham, and this was also taken away from him. Knuckles also got another knife, and she took this away from him. Graham sat at the table, and made no advance on Knuckles.

On the other hand, the proof for the defendant was in effect that Knuckles had a knife and Mrs. Phelps took it away from him and pushed him down in a chair. He then got another knife, and that was taken away from him. He then went out of the back door and came back in with a hammer in his hand, and, when that was taken from him, Mrs. Phelps asked Graham to leave to avoid any further trouble, and he left. He went to the shed and was sitting there talking to two friends when Knuckles came up with a brick in his hand, about fifteen minutes later, and cursed him. He said, "I don't want to hurt you, go away." Knuckles said, "You are a

damn liar and a son of a bitch if you don't," and drew the brick back, threatening to strike him, and he fired his pistol. He threw up his arm over his head because he thought he was going to hit him with a brick and shot with the other hand. He also said that Knuckles acted like he was drinking, and that this was the first time he had seen him. When he shot, Knuckles had raised his hand over his head with the brick in it. One of the witnesses testified that Graham said to Knuckles, in the dispute there, "I will knock hell out of you."

On the calling of the case for trial, the defendant moved the court to continue the trial of the case on the ground that two days previously the defendant had been tried and found guilty by a jury in the court under an indictment charging him with the felony of shooting at one Tom McCarty without wounding him. The court overruled the motion.

"The matter of granting or refusing a continuance in a criminal case is addressed to the sound discretion of the trial court, and the action of the court in denying a continuance will not be interfered with, unless it is shown that the court abused its discretion in the matter." Robertson's New Ky. Criminal Law & Procedure (2d Ed.) sec. 1900, p. 2022.

So far as appears, the indictment for shooting at Tom McCarty had no connection with this case, and no showing was made that anything that occurred in that case would prejudice the defendant with any of the jury that heard this case. If such was the fact, this might be the basis for a motion that a special jury be summoned in this case. But this motion was not made, and there was no showing that any of the panel that tried the case were prejudiced in any way. The court therefore did not abuse a sound discretion in overruling the motion to continue the case. It is important that justice should be administered without unreasonable delay.

There was no variance between the indictment for willful murder and the proof heard on the trial. By section 262 of the Criminal Code of Practice, upon an indictment for an offense consisting of different degrees, the defendant may be found guilty of any degree not higher than that charged in the indictment, and by section 263 all offenses of homicide shall be

deemed degrees of the same offense. Under these provisions it is well settled that one indicted for murder may be convicted for manslaughter. See cases collected in notes to above sections of the Criminal Code.

There was sufficient evidence to support the verdict of the jury finding the defendant guilty of voluntary manslaughter, and the verdict is not palpably against the evidence. The rule is, if there is any evidence, the question is for the jury. Com. v. Boaz, 140 Ky. 715, 131 S. W. 782. Knuckles was drunk and acting foolish, but this did not give Graham the right to kill him, unless he was then in danger of death or of suffering great bodily harm at the hands of Knuckles. In view of the size of the two men and the circumstances, the jury were well warranted in believing that all Graham had to do was to let Knuckles alone. He was 14 feet from Graham, and, if he had thrown the brick, Graham could easily have dodged it. Under all the facts, the jury were warranted in concluding that Graham shot Knuckles, not because he was in danger, but because he was aggravated by Knuckles following him up and insulting him. Questions like this are peculiarly for the jury, and their verdict will not be disturbed, unless palpably against the evidence. That is not the case here. Branham v. Com., 223 Ky. 233, 3 S. W. (2d) 629.

There was no substantial error of the court in the admission of evidence. The proof that Knuckles was a weakly delicate man about 5 feet tall and weighing about 115 pounds was properly admitted, and there was no substantial error in the examination of witnesses. When Mrs. Phelps was on the stand, she did not answer affirmatively a question asked her by the commonwealth attorney, and then she was asked if she had not made a certain statement on the examining trial, and answered, "Yes, sir, I think so." It is not improper when a witness fails to answer a question to ask him, by way of refreshing his recollection, if he has not so testified on a former occasion. Butler v. Com., 2 S. W. 228, 26 Ky. Law Rep. 465.

The above are the only matters relied on for reversal. A judgment of conviction may only be reversed for an error of law when upon consideration of the whole case the court is satisfied that the substantial rights of the defendant have been prejudiced thereby.

Judgment affirmed.